UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SENON MARTINEZ MONTOYA, on behalf of:
himself and others similarly situated in the
proposed FLSA Collective Action,                     :
                                                     :
                                                     :
                              Plaintiffs,            :          23 Civ. 111 (JLR) (GS)
                                                     :
                                                     :          REPORT AND
                - against -                          :          RECOMMENDATION
                                                     :
HAVANA CENTRAL NY 2, LLC and                         :
JEREMY MERRIN,                                       :
                                                     :
                              Defendants.            :
------------------------------------------------------------x

**GARY STEIN, United States Magistrate Judge:**

On April 3, 2023, Plaintiff Senon Martinez Montoya, on behalf of himself

and others similarly situated, filed a First Amended Complaint ("FAC") against

Havana Central NY 2, LLC and its owner, Jeremy Merrin, for violations of the Fair

Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and Articles 6 and 19 of the New

York State Labor Law. (Dkt. No. 13). Defendants filed a motion to dismiss the FAC

in its entirety on April 10, 2023. (Dkt. No. 15). For the reasons set forth below, the

Court respectfully recommends that Defendants' motion to dismiss be **DENIED**.

## BACKGROUND

The following facts are taken from the FAC, which the Court accepts as true

for purposes of adjudicating the instant motion. *See Montgomery v. Holland*, 408 F.

Supp. 3d 353, 361 (S.D.N.Y. 2019).

## A. The Allegations in the FAC

Defendant Havana Central NY 2, LLC ("Havana Central") is a limited liability company that is organized under Delaware law and maintains its principal place of business at 151 West 46th Street, New York, NY 10036.  (FAC ¶ 12).  Defendant Jeremy Merrin ("Merrin" and, together with Havana Central, "Defendants") is the "'President/Founder'" of Havana Central.  (*Id.* ¶ 21).  Merrin "possessed operational control over" Havana Central, including determining and approving employees' wages and compensation, setting employees' schedules, maintaining employee records, and hiring/firing employees, during Plaintiff's tenure.  (*Id.* ¶¶ 20, 22; *see also id.* ¶ 24).

Plaintiff Senon Martinez Montoya ("Plaintiff" or "Montoya") was employed at Defendants' restaurant, known as "Havana Central" and also located at 151 West 46th Street in Manhattan.  (*Id.* ¶ 8).  Montoya worked as a "non-managerial employee" at the restaurant from on or around January 20, 2003 through and including March 15, 2020.  (*Id.* ¶ 9).  Plaintiff reported directly to Merrin during the duration of his employment.  (*Id.* ¶¶ 23, 25).

At Havana Central, Plaintiff worked as a delivery person and then as a prep cook.  (*Id.* ¶¶ 36-40).  From approximately January 20, 2003 to December 31, 2003, Plaintiff was responsible for delivering food to Defendants' customers.  (*Id.* ¶¶ 36-37).  Thereafter, from January 2004 through March 15, 2020, Plaintiff worked as a prep cook, either making empanadas or preparing cold foods (called "'cold prep'").  (*Id.* ¶¶ 39-40).

2

Plaintiff alleges that from January 6, 2017 through December 2017, when he was responsible for making empanadas, he worked five days per week "from approximately 6:00 a.m. to 5:00 p.m. or 6:00 p.m. (*i.e.*, eleven (11) or twelve (12) hours per day) for a total average of approximately 55 to 60 hours" per week.  (*Id.* ¶ 45).  From approximately January 2018 through and including March 15, 2020, when he was responsible for cold prep, Montoya worked five days per week "from approximately 6:00 a.m. to 4:00 p.m. or 5:00 p.m. (*i.e.*, ten (10) or eleven (11) hours per day) for a total average of approximately 50 to 55 hours" per week.  (*Id.* ¶ 46).  For the entirety of Montoya's time as a prep cook (*i.e.*, from January 6, 2017 through and including March 15, 2020), Plaintiff alleges that he was paid a flat weekly salary of $711.53 to $807.70 per week, regardless of the number of hours he worked.  (*Id.* ¶ 47).

In other words, Plaintiff alleges that he "was required to work in excess of forty (40) hours per week" without receiving overtime pay.  (*Id.* ¶ 48).  He further alleges that Defendants' conduct "extended beyond Plaintiff to all other similarly situated employees."  (*Id.* ¶ 49).

Plaintiff avers that "[t]o accomplish their business goals" and save money, "Defendants intentionally misclassify their delivery workers and prep cooks" as "salaried employees."  (*Id.* ¶ 50).  In his roles as a delivery driver and prep cook, Montoya was never responsible for managing Havana Central or any department or subdivision thereof, he never directed two or more full-time employees, he did not have the authority to hire or terminate employees, and he neither provided, nor was

3

expected to provide, suggestions or recommendations to management regarding the hiring, firing, advancement, or promotion of Havana Central employees.  (*Id.* ¶¶ 51-54).

Despite this, Plaintiff was paid on a salary basis.  (*Id.* ¶ 47).  Plaintiff avers that "Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL."  (*Id.* ¶ 55).  Defendants' alleged policy of "knowingly and intentionally misclassifying" non-exempt workers as exempt salaried employees, according to Plaintiff, constituted a "willful[] violat[ion] [of] the FLSA and NYLL."  (*Id.* ¶ 56; *see also id.* ¶¶ 66-67).  Furthermore, Plaintiff alleges that "Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records."  (*Id.* ¶ 57).

In support of his allegations, Plaintiff attaches three exhibits to the FAC: (1) a "New Employee Worksheet," ostensibly completed by Montoya when he was hired in 2003 (Dkt. No. 13-1 ("Exh. A")); (2) three "Employee Raise Authorization" forms concerning Montoya's salary dated February 19, 2007, March 8, 2013, and May 23, 2017 (Dkt. No. 13-2 ("Exh. B")); and (3) a March 8, 2013 email exchange in which Merrin approved a raise for Montoya (Dkt. No. 13-3 ("Exh. C")).

The FAC sets forth two causes of action against Defendants.  (*Id.* at 9-11).  First, Plaintiff brings a claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA" or the "Act"), for failing to pay Plaintiff overtime to which he was

4

entitled.  (*Id.* ¶¶ 62-69).  Second, Plaintiff brings an overtime claim under the New York State Labor Law ("NYLL").  (*Id.* ¶¶ 70-75).  On both claims, Plaintiff seeks to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and pre-and-post judgment interest.  (*Id.* ¶¶ 69, 75 & p. 12).

The FAC also contains FLSA collective action allegations and asserts the first claim for relief as a collective action "on behalf of all non-exempt persons (including but not limited to prep cooks)" employed by Defendants over the three-year period prior to commencement of this action.  (*Id.* ¶¶ 58-61).

**B.  Procedural History**

Plaintiff commenced this action by filing a complaint on January 6, 2023. (Dkt. No. 1 ("Complaint")).  On March 13, 2023, Defendants moved to dismiss the Complaint.  (Dkt. No. 9).  While the motion to dismiss was pending, the parties engaged in mediation on March 30, 2023.  (*See* March 17, 2023 Dkt. Entry).  Shortly thereafter, on April 3, 2023, Plaintiff amended the complaint.  (Dkt. No. 13).

On April 10, 2023, Defendants filed a motion to dismiss the FAC (Dkt. No. 15), accompanied by a declaration of counsel (Dkt. No. 16) attaching the Complaint and the FAC (Dkt. Nos. 16-1–16-2), and a memorandum of law in support of their motion (Dkt. No. 17 ("Def. Br.")).  Plaintiff submitted a memorandum of law in opposition to Defendants' motion (Dkt. No. 26 ("Pl. Br.")), along with counsel's declaration (Dkt. No. 27) and supporting exhibits (Dkt. Nos. 27-1–27-2). Defendants submitted a reply in further support of their motion on May 1, 2023. (Dkt. No. 30 ("Reply")).

While briefing Defendants' motion to dismiss, the parties continued to engage in mediation, which was ultimately unsuccessful.  On September 18, 2023, this matter was referred to the undersigned.  Thereafter, on November 29, 2023, the Hon. Jennifer L. Rochon amended the order of reference to include dispositive motions requiring a report and recommendation, such as the instant motion.  (Dkt. No. 40).

## LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 566 U.S. at 678.  The factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (complaint must raise "more than a sheer possibility that a defendant has acted unlawfully").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor."  *Palin v. New York Times Co.*, 940 F.3d 804, 809

6

(2d Cir. 2019) (citation omitted).  Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von Blanckensee*, 94 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Determining whether a plausible claim has been pled is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023).  However, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."  *Twombly*, 550 U.S. at 556. The court's task "is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020).

### B. Overtime Provisions of the FLSA and NYLL

Section 207(a) of the FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess" of forty hours "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The NYLL likewise provides that employees working more than forty hours in a given workweek are entitled to "time and a half" for the excess hours worked.  *See* 12 N.Y.C.R.R. § 142-2-2.

The protections of the labor laws do not apply to all workers.  Employees are "exempt" from the FLSA's overtime requirements if they work in "a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  Relevant here, an "employee employed in a bona fide administrative capacity" is defined as "any employee [] [c]ompensated on a salary or fee basis . . . at a rate of not less than $648 per week . . . [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer . . . and [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).  Generally, an employee will be deemed to be "paid on a 'salary basis'" as used in 29 C.F.R. § 541.200 "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).

The NYLL also adopts a "primary duty" test, which asks whether the employee performs work

> requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes . . .

12 N.Y.C.R.R. § 142-2.14(c)(iii).  An employee whose primary duties go beyond "routine mental, manual or physical processes" is exempt from the NYLL and accordingly not entitled to overtime pay.  *Id.*

# DISCUSSION

Defendants raise three arguments in support of their motion to dismiss the FAC. First, they argue that Plaintiff's FLSA claim is time barred. (Def. Br. at 1, 5-9; Reply at 2-6). Second, Defendants maintain that, even if Plaintiff's FLSA claim is timely, Plaintiff fails to sufficiently plead an overtime violation in accordance with Second Circuit precedent. (Def. Br. at 2, 9-12; Reply at 7-8). Third, Defendants contend that, because Plaintiff's FLSA claim should be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's NYLL claim, which they also argue, in the alternative, is insufficiently pled. (Def. Br. at 2, 12-13; Reply at 8-9).

## A. The FLSA's Three-Year Limitations Period Applies to Plaintiff's FLSA Overtime Claim and, Thus, Plaintiff's FLSA Claim Is Timely

### 1. Applicable Law

The FLSA imposes a two-year limitations period for, *inter alia*, claims for unpaid overtime. 29 U.S.C. § 255(a). The statute provides an exception for claims arising out of "willful violations" of the Act, which may be brought within three years of accrual of the claim. *Id.*[1] "In extending the limitations period for an additional year based upon the employer's intent, claims for willful violation of the FLSA act as a 'punitive measure' for employers who are more culpable than those who violate the statute only negligently." *Whiteside v. Hover-Davis*, 995 F.3d 315,

---

[1] The NYLL, by contrast, applies a six-year limitations period for overtime claims. NYLL § 198(3), 663(3).

322 (2d Cir. 2021) (quoting *Brock v. Richland Shoe Co.*, 799 F.2d 80, 84 (3d Cir. 1986)).

Generally, a defendant must plead and prove an affirmative defense such as the expiration of a limitations period. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see* Fed. R. Civ. P. 8(c)(1) ("[i]n responding to a pleading, a party must affirmatively state any . . . affirmative defense, including . . . statute of limitations"). However, for purposes of whether the two-year or three-year limitations period will apply in an FLSA case, it is the *plaintiff*, not the defendant, who bears the burden of pleading facts demonstrating willfulness. *Whiteside*, 995 F.3d at 323 ("When a plaintiff relies on a theory of willfulness to save an FLSA claim that otherwise appears untimely on its face, it should similarly be incumbent on the plaintiff to plead facts that make entitlement to the willfulness exception plausible.").

The question of which limitations period applies to an FLSA claim is, therefore, "distinguishable from those typically attendant to [the court's] evaluation of a defendant's affirmative defense at the pleadings stage." *Id.* at 322. Thus, although willfulness if often a fact-intensive inquiry, and courts considering the question on a motion to dismiss "tend to favor findings of willfulness," *Maria v. El Mambi Rest. Corp.*, No. 20 Civ. 3707 (JPO), 2021 WL 2337577, at *4 (S.D.N.Y. June 8, 2021) (citation omitted), if the complaint fails to allege sufficient grounds for a finding of willfulness and the claim is otherwise out of time, the claim should be dismissed. *Whiteside*, 995 F.3d at 323.

"An employer willfully violates the FLSA when it either knew of or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (citation omitted). "Mere negligence is insufficient;" if "an employer acts unreasonably, but not recklessly, in determining its legal obligation," its actions are not willful. *Whiteside*, 995 F.3d at 324 (citations omitted); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citation omitted). Reckless disregard, in this context, "involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937-38 (S.D.N.Y. 2013).

### 2. Application

Plaintiff filed the Complaint on January 6, 2023. (Dkt. No. 1). His employment with Defendants ended on March 15, 2020. (FAC ¶¶ 9, 38). Plaintiff does not dispute that his claims accrued more than two years ago. Thus, unless the three-year limitations period applies because the FAC adequately pleads that Defendants acted willfully, Plaintiff's FLSA claim is time barred.

Plaintiff has sufficiently pled that Defendants' alleged violation of the FLSA's overtime provision was willful. The FAC's allegations support the inference that Defendants knew they were violating the FLSA when they classified Plaintiff as a salaried employee. First, the work performed by Plaintiff at Havana Central— initially as a delivery person and then as a prep cook, making empanadas and doing "cold prep"—was paradigmatically manual, and clearly not executive,

11

administrative, or professional in nature.  (FAC ¶¶ 38-40, 44).  As such, Plaintiff alleges he had no management responsibilities, supervisory authority, or other role at Havana Central that might justify classifying him as exempt.  (*See id.* ¶¶ 51-54). Yet Plaintiff was paid throughout on a salary basis.  (*Id.* ¶¶ 1, 47 & Exhs. A, B & C). These allegations give rise to a reasonable inference that Defendants knew that Plaintiff was not exempt from the FLSA's overtime requirements and intentionally misclassified him so he could be paid on a salary basis as if he were an exempt employee.

Second, in support of his contention that Defendants acted willfully, Plaintiff alleges that, "to accomplish their business goals, Defendants intentionally misclassify their delivery workers and prep cooks, including Plaintiff, as salaried employees, and fail to pay" these employees legally required wages, including overtime.  (*Id.* ¶ 50).  Plaintiff further alleges that "Defendants willfully violated the FLSA and NYLL by knowingly and intentionally misclassifying their delivery workers and prep cooks and exempt salaried employees," and that "Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA." (*Id.* ¶¶ 55, 56).

Third, Plaintiff alleges that Defendants knew he was working overtime without compensation.  The FAC specifically pleads that "Plaintiff was *required* to work in excess of forty (40) hours per week," without receiving overtime pay at time and a half.  (*Id.* ¶ 48; emphasis added).  Moreover, if, as the FAC alleges, Plaintiff

was present and working at the restaurant each day from 6:00 a.m. until anywhere from 4:00 p.m. to 6:00 p.m. (*id.* ¶¶ 45-46), it is reasonable to infer that Defendants were aware he was working more than 40 hours per week.  Plaintiff further alleges that Defendants "purposefully evaded" the FLSA's recordkeeping requirements by "failing to maintain accurate and complete timesheets and payroll records" that presumably would have reflected the hours Plaintiff worked and their failure to pay him overtime.  (*Id.* ¶¶ 57, 68).

Fourth, as alleged, Havana Central has been in the restaurant business since at least 2003, is an LLC formed under Delaware law, and appears, based on the Exhibits to the FAC, to have standard employment forms and several managerial employees.  (*Id.* ¶¶ 9, 12 & Exhs. A, B & C).  That degree of experience and sophistication further suggests Defendants were aware of the FLSA's requirements and did not unwittingly or negligently misclassify Plaintiff as an exempt managerial employee.

For all these reasons, the factual allegations in the FAC plausibly raise a reasonable inference that Defendants were engaged in an intentional misclassification scheme evincing a willful attempt to avoid paying overtime.

Other courts in this Circuit have found similar allegations that employees were misclassified as exempt salary employees and regularly worked more than forty hours per week, without being compensated for those overtime hours, to be sufficient to plead willfulness.  *See, e.g.*, *Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 67-68 (N.D.N.Y. 2008) ("By alleging that Defendant repeatedly failed to pay

13

overtime wages, misclassified Plaintiffs under the FLSA, and engaged in record keeping violations to thwart the ability to determine Plaintiffs' 'wages, hours, and other conditions' of employment, Plaintiffs allege sufficient facts to maintain the claim that Defendants willfully violated the FLSA.").

Most notably, in *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2005 WL 1214337 (S.D.N.Y. May 20, 2005), then-District Judge Gerard E. Lynch found that plaintiffs adequately pled willfulness for purposes of the limitations period where they had alleged that Duane Reade "intentionally designated [plaintiffs] as 'managers' in [an] attempt to justify classifying them as exempt from overtime protections and avoid liability for overtime payments properly due" under the FLSA. *Id.* at *2. In *Damassia*, plaintiffs—stock clerks—alleged with specificity the kinds of work they were required to do, that the work was assigned by Duane Reade and/or that Duane Reade was aware of the work they performed, and that the misclassification of them as exempt executives was part of Duane Reade's "policy and pattern or practice." *Id.* Judge Lynch found these allegations to "provide ample factual detail" sufficient to survive a motion to dismiss. *Id.* at *2-3.

So too here. The FAC is clear regarding Plaintiff's responsibilities during the relevant period: making empanadas and preparing cold foods. (FAC ¶¶ 39-40). Despite the manual and non-managerial nature of his job responsibilities, Plaintiff was paid on a salary basis, *i.e.*, he was paid a predetermined amount ($37,000 or $40,000 per year), which did not change based on the quantity or quality of his work. (*Id.* ¶ 47 & Exh. B at 2-3). Plaintiff alleges that he was "required to work in

14

excess of" forty hours per week without receiving overtime pay.  (*Id.* ¶ 48).  And, as in *Damassia*, Plaintiff alleges that Defendants misclassify their workers as salaried "pursuant to a corporate policy of minimizing labor costs."  (*Id.* ¶ 55).  Accordingly, Plaintiff has "clearly set forth an assertion that [D]efendant[s] acted willfully" and with "the deliberate and devious intention of mislabeling their employees in order to cover up the violation."  *Damassia*, 2005 WL 1214337, at *2.

Defendants argue that the FAC provides nothing but "purely conclusory allegations" of willfulness and lacks "any factual allegations to suggest that Defendants knew their alleged conduct violated or could violate the FLSA."  (Def. Br. at 7).  But, as demonstrated, that is not the case.  The FAC contains specific, plausible allegations that Defendants engaged in an intentional misclassification scheme designed to avoid their obligation to pay Plaintiff overtime.

Defendants also argue that Plaintiff fails to allege that anyone from Havana Central management "informed him they were aware of their obligations under the FLSA" or that he (or any other employee) "complained to Defendants about the purported failure to pay overtime."  (Def. Br. at 7-8).  But the premise underlying this argument—that such allegations are *necessary* to plead willfulness under the FLSA—is unsound.  Such allegations are one way of pleading willfulness, *see, e.g.*, *Hernandez v. NHR Human Res., LLC*, No. 20 Civ. 3109 (PGG) (DF), 2021 WL 2535534, at *2, *9 (S.D.N.Y. June 18, 2021), but they are not the only way.  Judge Lynch's opinion in *Damassia*, which did not mention any allegations of this nature by the plaintiffs in that case, shows as much.  *See also, e.g.*, *Ruggles*, 253 F.R.D. at

68; *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12 Civ. 9353 (PAC), 2015 WL 1881080, at *4 (S.D.N.Y. Apr. 24, 2015) ("violations following previous Department of Labor investigations and adverse findings demonstrate willfulness").

Defendants heavily rely on the Second Circuit's decision in *Whiteside* (Def. Br. at 6-7; Reply at 3-6), but that case is inapposite. In *Whiteside*, the plaintiff worked for approximately thirteen years as a quality engineer and, in this role, was classified as a salaried employee exempt from the FLSA's overtime requirements (which classification plaintiff did not contest). 995 F.3d at 318. Thereafter, plaintiff was asked to "switch positions" and serve as a technician performing repair work. *Id.* Plaintiff claimed the technician role was non-exempt and that he should have been (but was not) paid overtime. *Id.* Nevertheless, plaintiff's salary remained the same as when he was an engineer. *Id.* at 324. On these facts, the Circuit was unable to "infer willfulness from the mere fact that [plaintiff] was asked for a period of time to perform job responsibilities typically performed by non-exempt employees even though he was classified as exempt." *Id.*

Unlike the allegations here, the defendant in *Whiteside* did not stand to gain financially from switching plaintiff's position to that of a technician. Without more, the court could not infer that an employer who switched an employee's role and title, but did not reduce their salary, knew that their conduct violated the law. By contrast, Plaintiff alleges that Defendants paid him (and others) on a salary basis for the express purpose of violating the FLSA by "minimizing labor costs" through a

16

scheme to avoid paying overtime.  (FAC ¶ 55).  These allegations are sufficient to plead willfulness.  *See Damassia*, 2005 WL 1214337, at *2.

Defendants further argue that decisions issued prior to *Whiteside* are no longer good law in view of the pleading standard for willfulness enunciated in that case.  (Reply at 3-4).  Defendants overstate the import of *Whiteside*.  That case holds that "the mere allegation of willfulness is insufficient to allow an FLSA plaintiff to obtain the benefit of the three-year exception at the pleadings stage" and that "a plaintiff must allege facts that permit a plausible inference that the defendant willfully violated the FLSA for that exception to apply."  *Whiteside*, 995 F.3d at 323.  But in sustaining the complaint in *Damassia*, for instance, Judge Lynch found that plaintiffs had done precisely that: pled "ample factual detail" supporting the allegation of willfulness.  2005 WL 1214337, at *2.  Indeed, Judge Lynch noted that "[i]t is difficult to imagine what further 'facts' plaintiffs could allege, without access to 'smoking gun' internal memorandum unlikely to be available to them without the legal compulsion of the discovery process."  *Id.*

While *Damassia* was decided before *Whiteside*, the factual allegations therein clearly pass muster under the *Whiteside* standard.  So do the substantially similar factual allegations pled in the FAC here.  As in *Damassia*, while "the fact that plaintiff[] allege[s] such facts does not mean that they are true or can be proven," Plaintiff is "entitled to attempt to prove what [he] allege[s]."  *Id.* at *3.

### B. Plaintiff Adequately Pleads an Overtime Violation Under the FLSA

#### 1. Applicable Law

To state a claim for relief for unpaid overtime under the FLSA, "a plaintiff must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours." *Smith v. Town of Patterson*, No. 22 Civ. 313 (NSR), 2023 WL 199522, at *2 (S.D.N.Y. Jan. 17, 2023) (citation omitted).  The Second Circuit "elaborated on this standard in a trio of cases" decided in 2013.  *Id.*

First, in *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106 (2d Cir. 2013), the Circuit concluded that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of forty hours." *Id.* at 114.  The *Lundy* court dismissed plaintiff's complaint because plaintiff did not allege a week in which she worked over 40 hours.  *Id.*  Indeed, plaintiff alleged that she typically worked 37.5 hours per week and "occasionally" worked an additional 12.5-hour shift.  *Id.* Plaintiff, however, did not plead "how occasionally" she worked this additional shift, nor did she allege that she was denied overtime pay for any week of her employ.  *Id.* at 114-15.

Next, in *Nakahata v. New York Presbyterian Healthcare System, Inc.*, 723 F.3d 192 (2d Cir. 2013), the Circuit held that "mere" allegations that plaintiffs were not paid for overtime hours worked, *i.e.*, that plaintiffs were not compensated for work performed during meal breaks, before and after shifts, or during required

18

trainings, only "raise the possibility that Plaintiffs were undercompensated in violation of the FLSA and NYLL." *Id.* at 201. The court found that plaintiffs' allegations were even less specific than those alleged in *Lundy*, emphasizing that a plaintiff "must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.*

The Circuit concluded the trilogy of cases in *DeJesus v. HF Management Services, LLC*, 726 F.3d 85 (2d Cir. 2013). The *DeJesus* court likewise affirmed dismissal of an overtime claim, where the plaintiff "did not estimate her hours in any or all weeks" and where plaintiff's complaint was "devoid of any numbers to consider beyond those plucked from the statute." *Id.* at 89; *see also id.* at 88-89 (explaining that "*Lundy* . . . failed because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime"). The court nevertheless clarified that plaintiffs are not required to "plead their hours with mathematical precision," but are required to draw upon their "memory and experience" to plead "sufficiently developed factual allegations." *Id.* at 90.

More recently, in *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110 (2d Cir. 2023), which was decided after the instant motion was fully briefed, the Second Circuit revisited the question of "[w]hat level of specificity" is required to plead an overtime claim under the FLSA. *Id.* at 111. In *Herrera*, as here, plaintiffs claimed they had been misclassified as exempt employees and never paid overtime despite

19

working more than forty hours per week.  *Id.* at 112-14 & n.3.  Reversing the district court's dismissal of the complaint, the Circuit held that where plaintiffs "plausibly allege that they worked more than forty hours per week as part of their regularly scheduled workweek, they have adequately stated a claim under the FSLA and need not list the specific workweeks during which they worked more than forty hours."  *Id.* at 112.  Because the *Herrera* plaintiffs "identified a period of time when they were employed to work more than forty hours per week as part of their regularly scheduled workweek, and . . . quantified the number of hours they were required to work as part of their regular schedule," they satisfied the dictates of *Lundy*, *Nakahata*, and *DeJesus*.  *Id.* at 116.

### 2. Application

Plaintiff's allegations are sufficient to plead an overtime claim under Second Circuit precedent.  Plaintiff alleges that, from January 6, 2017 to December 2017, he worked from around 6:00 a.m. to 5:00 p.m. or 6:00 p.m. for a total average of 55 to 60 hours during each of these weeks, and that from January 2018 through March 15, 2020, he worked from approximately 6:00 a.m. to 4:00 p.m. or 5:00 p.m. for a total average of 50 to 55 hours each week.  (FAC ¶¶ 45-46).  Plaintiff further alleges that from January 2017 to March 2020, he was paid a fixed weekly salary of $711.53 to $807.70 per week, regardless of the amount of hours he worked.  (*Id.* ¶ 47).

"Courts in this district have long applied a presumption that a fixed weekly wage covers only the first forty hours of the workweek."  *Jung v. Gina Grp., LLC*,

Case 1:23-cv-00111-JLR-GS   Document 43   Filed 01/08/24   Page 21 of 27


No. 19 Civ. 8624 (MKV), 2020 WL 3640048, at *3 (S.D.N.Y. July 6, 2020) (collecting cases).  Indeed, defendants carry the burden of showing that a plaintiff's weekly salary was intended to cover more than forty hours per week.  *Marcial v. New Hudson Family Rest. Inc.*, No. 18 Civ. 0663 (NSR) (JCM), 2019 WL 1900336, at *5 (S.D.N.Y. Apr. 29, 2019).  Applying the presumption that a flat weekly wage encompasses only the first forty hours of a workweek, Plaintiff has pled a plausible overtime claim by alleging that he worked over forty hours for each week of his employ (FAC ¶¶ 45-46) but was paid a fixed weekly salary that did not encompass overtime (*id.* ¶ 47 & Exhs. A, B & C).

These allegations contain enough specificity to satisfy *Lundy* and its progeny. The FAC specifies the time periods when Plaintiff worked more than a forty-hour workweek, approximately how many hours he worked, and when Plaintiff's shifts started and ended, thus "provid[ing] sufficient detail about the length and frequency of [his] unpaid work" to survive a motion to dismiss.  *Nakahata*, 723 F.3d at 301.  The Second Circuit's recent decision in *Herrera* makes abundantly clear that such allegations surmount the bar for pleading a plausible FLSA overtime claim:

> The Complaint alleges that the Plaintiffs' regularly scheduled work hours consisted of five shifts each week, and that each shift lasted between eight and three-quarter hours and nine hours, amounting to between 43.75 hours and 45 hours of work per regular week. *That allegation itself* gets us "beyond forty hours in any given [work]week, and therefore to a plausible claim of overtime."

21

*Herrera*, 84 F.4th at 115 (quoting *DeJesus*, 72 F.3d at 89) (emphasis added).

Therefore, as in *Herrera*, plaintiff has both (1) "identified a period of time when [he

was] employed to work more than forty hours per week as part of [his] regularly

scheduled workweek" and (2) "quantified the number of hours [he was] required to

work as part of [his] regular schedule." *Id.* at 116. Nothing more is required.

      Even before *Herrera*, district courts regularly found analogous allegations

sufficient to plead an FLSA overtime claim under *Lundy*, *Nakahata*, and *DeJesus*.

*See, e.g.*, *Jung*, 2020 WL 3640048, at *3 (allegations that, *inter alia*, plaintiff

"worked forty-five (45) hours each week" from August 2015 to August 2016,

September 2016 to September 2017, and January 2019 to June 2019, and was paid

a "fixed weekly wage," were sufficient to plead FLSA overtime violation); *Alarcon

Adame v. Evir Corp.*, No. 18 Civ. 2969 (PAC), 2019 WL 3287086, at *1-3 (S.D.N.Y.

July 22, 2019) (delivery worker at restaurant met pleading standard by alleging

"the approximate start times, end times, and number of days per week worked"

during the time he was employed, *e.g.*, that "between June 2017 and October 2017,

Plaintiff worked from approximately 3:00 p.m. until 11:00 p.m., six days per week,

averaging 48 hours per week"); *Werst v. Sarar USA Inc.*, No. 17 Civ. 2181 (VSB),

2018 WL 1399343, at *6 (S.D.N.Y. Mar. 16, 2018) (upholding claim by plaintiff who

alleged that her "standard workweek was from 10:00 a.m. to 6:00 p.m., however, she

routinely was required to work late, typically at least once or twice a week to 8:00

p.m. or 9:00 p.m."); *Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 168

(E.D.N.Y. 2018) (allegations that plaintiffs "worked 50-55 hours during every single

week of their employment," *e.g.*, "[f]rom August 3, 2013 through July 22, 2017, Kuck worked 10 hours each day, with a half hour meal break, six days a week" without receiving overtime compensation, "clearly satisfy the Second Circuit's edict that a complaint contain specificity as to uncompensated hours worked during a particular week"); *Lawtone-Bowles v. City of New York*, No. 16 Civ. 4240 (AJN), 2017 WL 4250513, at *4 (S.D.N.Y. Sept. 22, 2017) (allegations that plaintiffs worked eight hour shifts but consistently worked through lunch and an additional ten to thirty minutes before and after shifts presented "markedly different facts" than those in *Lundy*, *Nakahata*, and *DeJesus* and were sufficient to survive motion to dismiss).

Defendants' argument that the FAC lacks the requisite specificity (Def. Br. at 10-11; Reply at 7-8) is therefore unavailing.  Defendants rely on the Second Circuit's summary order in *Paleja v. KP NY Operations LLC*, 21-286-cv, 2022 WL 364007 (2d Cir. 2022), which upheld the dismissal of an overtime claim.  *Paleja* is distinguishable, however, as the holding was premised on plaintiff's failure "to allege that he was 'uncompensated' for time worked 'in excess of forty hours.'"  *Id.* at *2 (quoting *Lundy*, 711 F.3d at 114).  Crucially, in *Paleja*, while plaintiff alleged that in one week during September 2019 he was paid "some" $1,400 for working "approximately" 70 hours, plaintiff never alleged his regular rate of pay.  *Id.*  Thus, the court affirmed the district court's ruling that it was unable, on the facts alleged, to infer that the $1,400 payment failed to include overtime compensation.  *Id.*  By contrast, Montoya alleges his regular rate of pay in an exhibit attached to the FAC (as well as in the FAC itself).  (FAC ¶ 47 & Exh. B at 3).

The other cases cited by Defendants are likewise readily distinguishable. In *Hosseini v. Miilkiina LLC*, No. 22 Civ. 1459 (LJL), 2023 WL 2136390 (S.D.N.Y. Feb. 21, 2023), the plaintiff did not allege a single workweek in which she worked over forty hours. *Id.* at *6. She merely alleged that she "'worked approximately between 40 and 50 hours per week' from October 2020 onwards," without providing any "factual context indicating whether [she] worked more than forty hours in a given week." *Id.* (citing *Cortese v. Skanska Koch, Inc.*, No. 20 Civ. 1632 (LJL), 2021 WL 429971, at *12 (S.D.N.Y. Feb. 8, 2021) (cleaned up)). Furthermore, the plaintiff in *Hosseini* submitted an internally contradictory declaration indicating at one point that "it was agreed that I would work only 40 hours each week" and, in any event, "was employed as Head of Strategy on the executive team," a position which the court noted generally would be exempt from the FLSA's overtime requirements. *Id.* at *5-6 & n.3.

*Thompson v. Urban Recovery House, LLC*, No. 22 Civ. 9581 (PGG) (JLC), 2022 WL 589957 (S.D.N.Y. Feb. 28, 2022), is similarly unhelpful for Defendants. There, while plaintiff claimed to have worked "42.5 hour workweek[s]," the court concluded that the schedule plaintiff alleged "in fact amounts to a 37.5 hour work week inclusive of his one hour lunch break." *Id.* at *4. The overtime claim in *Thompson* thus failed for the same reason as the claim in *Lundy*: arithmetic. *See DeJesus*, 726 F.3d at 88. That is not the case here.[2]

---

[2] Defendants do correctly highlight that the cases Plaintiff relied upon in his opposition brief to support the argument that he adequately pled an overtime claim concern motions for a default

Accordingly, Plaintiff has plausibly pled a violation of the overtime provisions of the FLSA with the requisite specificity to survive a motion to dismiss.

### C. Plaintiff's NYLL Claim Should Not Be Dismissed

Because, for the reasons set forth above, the FAC pleads a timely and plausible claim for relief under the FLSA, it follows that Defendants' first argument for dismissal of Plaintiff's NYLL claim—that the Court should not exercise supplemental jurisdiction over the NYLL claim in the absence of a valid FLSA claim—lacks foundation.

Defendants' alternative argument—that Plaintiff fails to plead a plausible overtime claim under the NYLL—is equally unavailing.  The NYLL adopts the same definition of "overtime" as the FLSA.  *Amponin v. Olayan Am. Corp.*, No. 14 Civ. 2008 (TPG), 2015 WL 1190080, at *2 (S.D.N.Y. Mar. 16, 2015); *see* 12 N.Y.C.R.R. § 142-2.2 (incorporating definition of overtime from the FLSA into the NYLL).  Thus, the pleading standard applicable to overtime claims under the NYLL is "analytically identical" to the standard under the FLSA.  *Ramirez v. Temin & Co.*, No. 20 Civ. 6258 (ER), 2021 WL 4392303, at *18 (S.D.N.Y. Sept. 24, 2021); *see Amponin*, 2015 WL 1190080, at *2 (the applicable "pleading standard—and the

---

judgment.  (Reply at 7).  The Court agrees that these cases carry little weight, as they are not the process of the adversarial process.  (*See* Pl. Br. at 8-9 (citing *Sims v. Crown Waste Corp.*, No. 22 Civ. 6047 (BMC), 2023 WL 363070 (E.D.N.Y. Jan. 23, 2023) (adjudicating motion for default judgment); *Christian v. MH Plumbing & Mechanical Corp.*, No. 22 Civ. 04774, (Dkt. No. 21) (E.D.N.Y. Jan. 30, 2023) (same); *Kim v. Superior Café Corp.*, No. 21 Civ. 3620 (GBD) (RWL), 2022 WL 481725 (S.D.N.Y. Feb. 15, 2022) (same); *Persuad v. Adirondacks Protection Servs. LLC*, No. 22 Civ. 08115, (Dkt. No. 38) (S.D.N.Y. Apr. 26, 2022) (same); *Guerrero v. Danny's Furniture, Inc.*, No. 19 Civ. 7284 (LJL), 2021 WL 4155124 (S.D.N.Y. Sept. 13, 2021) (same)).

degree of specificity needed to state an overtime claim under the FLSA and NYLL—has been addressed by the Second Circuit" in a single series of cases).

As set forth above, the FAC pleads a plausible overtime claim under the FLSA.  For the same reasons, the FAC also pleads a plausible overtime claim under the NYLL.  Accordingly, it is appropriate to exercise supplemental jurisdiction over Plaintiff's NYLL claim.  *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 551 (S.D.N.Y. 2017) (exercising supplemental jurisdiction over plaintiff's NYLL claim and noting: "It would be grossly inefficient to retry the NYLL claims with the identical evidence in state court. It would be inconvenient to both sides. It would also be fundamentally unfair to require the parties to undergo the expense of a duplicative trial."); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 246 (2d Cir. 2011).

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that Defendants' motion to dismiss be **DENIED**.

DATED:     New York, New York
            January 5, 2024

_____
GARY STEIN
United States Magistrate Judge

26

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen calendar days, inclusive of weekends and holidays, from the date of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. The Parties shall deliver courtesy copies to chambers of the Hon. Jennifer L. Rochon at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rochon. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner v. Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).